ACKERMANN & TILAJEF, P.C.
Craig J. Ackerman, CA Bar No. 229832
cja@ackermanntilajef.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635

MELMED LAW GROUP P.C.
Jonathan Melmed, CA Bar No. 290218
jm@melmedlaw.com
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 824-3828
Facsimile: (310) 862-6851

Attorneys for Plaintiff

IN THE DISTRICT COURT OF THE UNITED STATES

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CHAVEZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>SHAMROCK FOODS COMPANY, an Arizona Corporation, and DOES 1 to 10,<br><br>        Defendant. | CASE NO.:  5:17-cv-00731-SVW-AFM<br><br>**NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     April 9, 2018<br>Time:    1:30 p.m.<br>Judge:  Hon. Stephen V. Wilson<br>Dept.:   10A |

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on April 9, 2018 or as soon thereafter as the matter may be heard, in Courtroom 10A of the United States District Court for the Central District of California before the Honorable Stephen V. Wilson, pursuant to Fed. R. Civ. P. 23(e), Plaintiff Miguel Chavez ("Plaintiff") individually and on behalf of all others similarly situated, will and does hereby move this Court for entry of an order finally approving the class action settlement in this matter, including:

1.      Finally certifying the Class, as defined in the parties' Settlement Agreement and the Court's Preliminary Approval Order, for purposes of settlement;

2.      Finally appointing Plaintiff as the Class Representative for purposes of settlement;

3.      Finally appointing Ackermann & Tilajef, P.C., and Melmed Law Group P.C. as Class Counsel for purposes of settlement;

4.      Finding that notice of the settlement was properly provided to the Class in accordance with the Court's Preliminary Approval Order;

5.      Finally approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the Settlement Agreement, including payment by Defendant of the non-reversionary Gross Settlement Amount of $350,000, and ordering the parties and the Settlement Administrator to carry out the terms of the Settlement Agreement;

6.      Approving payment of $8,750.00 to CPT Group, Inc., the Settlement Administrator, for the costs of administering the settlement;

7.      Approving the Class Representative Service award to Plaintiff in the amount of $7,500.00, to compensate him for the burden, risk, responsibility, time, and effort involved in coming forward on behalf of the Class and for entering into a general release that released claims far broader than those released by the Settlement Class; and

8.      Binding all of the Class Members to the terms of the Settlement Agreement, including the Release specified therein.

This motion is based upon the supporting Memorandum of Points and Authorities, the declarations submitted herewith, including the Declarations of Craig Ackermann and Andrei Larion, the exhibits submitted herewith, the declarations submitted with Plaintiff's motion for preliminary approval of the class action settlement and motion for attorneys' fees and costs, and all other papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing on this Motion.


Dated: April 2, 2018                                    Respectfully submitted,

                                                        ACKERMANN & TILAJEF, P.C.
                                                        MELMED LAW GROUP P.C.


                                        By:    /s/Craig J. Ackermann_____
                                               Craig J. Ackermann, Esq.
                                               Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

I.     INTRODUCTION & RELEVANT FACTS ............................................................7

       A.     Relevant Factual & Procedural Background......................................8

       B.     Summary of Settlement and Results of Class Notice Administration .........11

II.    CLASS MEMBERS WERE GIVEN THE BEST PRACTICAL NOTICE OF
       THE SETTLEMENT ...............................................................................12

III.   THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT ................13

       A.     Legal Standard.................................................................................13

       B.     Strengths of the Case and Risks of Litigation...............................14

       C.     Amount Offered in Settlement ......................................................16

       D.     The Extent of Discovery Completed and the Stage of Proceedings .............16

       E.     Counsel Believes the Settlement is in the Best Interest of the Class ............18

       F.     Class Members Unanimously Endorsed the Settlement ...............18

IV.    THE PROPOSED PAGA ALLOCATION SHOULD BE APPROVED .............19

V.     THE REQUESTED ENHANCEMENT AWARDS ARE REASONABLE .........20

VI.    THE REQUESTED ATTORNEYS FEES AND COSTS ARE
       REASONABLE....................................................................................21

VII.   CONCLUSION......................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Alvarado, et al. v. Nederend*, 2001 U.S. Dist. LEXIS 52793, *31 (E.D. Cal. 2011).......22

*Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 1013) ..........14

*Benitez v. Wilbur*, E.D. Cal. Case No. 08-1122 LJO GSA…………………………………22

*Birch v. Office Depot, Inc.*, 2008 U.S. Dist. LEXIS 102747, *7 Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶ 13…………………………………………………………………22

*Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013)..................18

*Bond v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ...........................................................................................20

*Chavez, et al. v. Petrissans*, 2008 U.S. Dist. LEXIS 111596, (E.D. Cal. 2008), 1:08-cv-00122…………………………………………………………………………………………..22

*Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)..................................14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) ..........................18

*Davis v. Cox Commc'ns California, LLC*, No. 16cv989 BAS (BLM), 2017 WL 1496407, at *1 (S.D. Cal. Apr. 26, 2017)…………………………………………………………...19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) .............................................12

*Elliott v. Rolling Frito-Lay Sales, LP*, 2014 U.S. Dist. LEXIS 83796, *29 (C.D. Cal. 2014) No. SACV 11-01730 DOC…………………………………………………………………22

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) ...........................18

*Fernandez v. Victoria Secret Stores,* 2008 U.S. Dist. LEXIS 118631, *1 (C.D. Cal. 2008)…………………………………………………………………………………………..22

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..................................................................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026. (9th Cir. 1998) ..............................14, 18

*Hightower v. JPMorgan Chase Bank, N.A.*, No. CV111802 PSGPLAX, 2015 WL 9664959, at *11 (C.D. Cal. 2015) ……………………………………...…………………..22

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009)…………………………………………………………………………………..19

*In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003)............................16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)...............................13

*In re Mercury International Corp. Securities Litigation*, 618 F. 3d 918, 933 (9th Cir. 2010)…………………………………………………………………………………………..10

*In re Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 579 (2010)…………………19

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) .......................................14

*Ingalls v. Hallmark Mktg. Corp.*, 2009 U.S. Dist. LEXIS 131078, *6 (C.D. Cal. 2009) 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6 (C.D.Cal. Oct. 16, 2009)................................22

*Jack v. Hartford Fire Ins. Co.*, No. 09cv1683 MMA (JMA), 2011 WL 4899942, at *6 (S.D. Cal. Oct. 13, 2011)..................................................................................19

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ..............................................................................17

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314......................................................................................................21

*Moore v. Fitness Int'l, LLC*, No. 12cv1551 LAB (NLS), 2014 WL 12571448, at *5 (S.D. Cal. Jan. 22, 2014)..........................................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ......................12

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)...........................................................................................................13, 14

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016)............19

*Ortiz v. CVS Caremark Corp.*, 2013 U.S. Dist. LEXIS 169854, *39 (N.D. Cal. 2013)...15

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)....................................12

*Rippee v. Boston Mkt. Corp.*, 20106 U.S. Dist. LEXIS 101136, *13 (C.D. Cal. 2006) Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7–8................................................22

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) .............................14

*Singer v. Becton Dickinson & Co.*, No. 08cv821 IEG (BLM), 2010 WL 2196104, at *2 (S.D. Cal. June 1, 2010)..........................................................................................19

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ..........................13

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) ..........21, 22

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558.......................................................................................................21

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011) 14

**Statutes**

Bus. & Prof. Code §§ 17200… ...................................................................8, 9

Fed. R. Civ. P. 23 ...................................................................................ii, 5, 6

Labor Code § 2802…............................................................................8, 9 ,15, 16

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION & RELEVANT FACTS

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Miguel Chavez, individually and on behalf of all others similarly situated ("Plaintiff") seeks an order finally approving the settlement of this wage-and-hour class action (the "Settlement") brought on behalf of a "Class" of "all persons who have been employed by Defendant in California as Account Executives, Outside Sales Representatives and/or in a similar sales job capacity and who received a flat rate reimbursement for automobile-related business expenses, in an amount less than $800 per month, at any time between March 13, 2013 through December 31, 2017 (the "Class Period")". (See Court's Preliminary Approval Order ("PA Order") ¶ 3). The Class consists of 111 individuals.

The Settlement, which was preliminarily approved by this Court on January 3, 2018, contemplates a non-reversionary Gross Settlement Amount of $350,000.00. If the Court grants final approval, the net settlement amount that will be distributed pro-rata to all 111 settlement Class members after the requested deductions set forth in the chart below, amounts to **$222,500.00**. (Declaration of Andrei Larion ("Larion Decl."), ¶¶ 7, 8). In light of the 100% Class participation rate, since there were no opt outs, the Gross Settlement Fund will be allocated as follows, if the Court proceeds to grant final approval.

|  | *Amount* |
|---|---|
| **Gross Settlement Fund:** | **$350,000.00** |
| Attorneys' Fees | ($87,500.00) |
| Litigation Costs | ($20,000.00)[1] |
| Settlement Administration | ($8,750.00) |
| Plaintiff's Service Award | ($7,500.00) |
| PAGA Penalties (75% LWDA portion) | ($3,750.00) |
| **Net Settlement Fund** | **$222,500.00** |

---

[1] Class Counsel actually incurred litigation costs in the amount of $20,745.03, however, Class Counsel only seeks reimbursement of litigation costs as set forth in the settlement and as conditionally approved by the Court in the amount of $20,000. (CJA Fee Decl., ¶ 24; Melmed Fee Decl., ¶ 13).

The Settlement is non-reversionary, and the Settlement shares will be distributed to the Class on a "checks-cashed" basis, meaning that all Class members who did not affirmatively opt out of the settlement (i.e., all Class Members) will automatically participate in the Settlement and receive a share of the Net Settlement Fund without the need for a Claim Form. The results are excellent - the average net settlement share will be $2,004.50 per Class Member, and the highest share will be $4,967.69. (Larion Decl., ¶ 8). Accordingly, there is truly no reason for the Court not to grant final approval of the Settlement, which it previously preliminarily approved.

## A.    Relevant Factual & Procedural Background

Defendant is a food service distributor that sells food products to restaurants, hotels, resorts, and other establishments. (*See* Declaration of Craig Ackermann in Support of Plaintiff's Motion for Preliminary Approval [Dkt. No. 29] ("Ackermann PAM Decl.") ¶ 17). In California, Defendant has employed 111 full-time Account Executives, Outside Sales Representatives, and/or similar sales representatives during the Class Period, including Plaintiff. (Larion Decl., ¶ 7; Declaration of Craig Ackermann in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Ackermann FAM Decl."), ¶ 5).

On March 13, 2017, Plaintiff filed his class action complaint in Riverside County Superior Court alleging causes of action on behalf of all of Defendant's current and former outside sales representatives and account executives over the last four years for (1) failure to reimburse business expenses in violation of Labor Code section 2802 and (2) UCL violations (Bus. & Prof. Code §§ 17200 *et seq.*). (Id. ¶ 18). The crux of Plaintiff's Complaint was that Defendant's outside sales persons, account executives, and/or similar sales jobs in California used their personal vehicles to make sales calls for Defendant, received a flat rate monthly reimbursement allowance, but were not fully reimbursed for their business-related gas mileage expenses, which exceeded their allowance. On April 24, 2017, after answering the Complaint on April 17, 2017 and denying Plaintiff's allegations, Defendant removed this case to the U.S. District Court for the Central District of California

pursuant to 28 U.S.C. § 1332.  Plaintiff did not file a motion to remand. (Id.).

The U.S. District Court held a status conference on May 22, 2017, following which the Court set a class certification filing deadline of November 15, 2017, and a class certification hearing date of January 8, 2018. (Id. ¶ 19).  In accordance with the Court's scheduling order, the parties moved expeditiously to conduct discovery on the merits of Plaintiff's claims and Defendant's defenses to prepare for the filing and opposing of Plaintiff's motion for class certification. (Id.). On May 30, 2017, Defendant served Interrogatories and Requests for Production on Plaintiff, as well as a deposition notice for Plaintiff's deposition. (Id.). On June 6, 2017, the parties agreed to a protective order to facilitate the exchange of some confidential pay documents and exchanged their initial disclosures. (Id.). On June 20, 2017, Plaintiff served Requests for Production, Interrogatories, and Rule 30(b)(6) Deposition notice on Defendant for testimony on various topics relevant to this case. (Id.).  In late July and early August 2017, the parties responded to one another's requests for production of documents and interrogatories. (Id.).

On August 18, 2017, after receiving certain discovery responses that indicated Plaintiff's claims were only viable for Class members receiving monthly allowances under $800 per month, Plaintiff filed his operative First Amended Complaint ("FAC"), narrowing the class definition to exclude sales representatives who were paid a flat rate amount above $800 a month in business expense reimbursement. (Id. ¶ 20). The FAC alleges causes of action for (1) failure to reimburse business expenses (Labor Code § 2802), and (2) UCL violations (Bus. & Prof. Code §§ 17200 *et seq.*). (Id.). On September 14, 2017, Defendant filed its Answer to Plaintiff's FAC, denying the allegations and asserting various affirmative defenses. (Id.).

October 3, 2017, Plaintiff took Defendant's deposition, pursuant to Rule 30(b)(6), on various topics at the heart of this case, including Defendant's reimbursement policies and practices, audits conducted to determine the miles driven per month by Class Members, and information about the Class. (Id. ¶ 21). The 30(b)(6) deposition lasted from 9:30 a.m. to approximately 1:40 p.m. (Id.). That same day, Defendant took the deposition of Plaintiff,

and the deposition lasted until approximately 5:30 pm. (Id.).

In October 2016, the parties agreed to participate in a private mediation with renowned wage-and-hour class action mediator, Mark Rudy. (Id. ¶ 23). In advance of Defendant's Rule 30(b)(6) deposition and the mediation, Defendant produced relevant documentation to Plaintiff's counsel that included: (1) a spreadsheet identifying the Class members, their dates of employment as Account Executives, their monthly mileage allowances, and dates, if at all, their allowances changed; (2) Defendant's "Account Executive" job description sheet; (3) an affidavit signed by Plaintiff and other class members attesting to, *inter alia*, his license and insurance status and his use of his personal vehicle for work; (4) Defendant's Street Sales Reimbursement Policy; (5) Plaintiff's employment offer; and (6) sample Class Member mileage logs from an "audit" conducted by Defendant of certain class members; (7) Plaintiff's earnings statements; (8) Plaintiff's employment application; and (9) Plaintiff's personnel file. (Id.). On October 26, 2017, the parties participated in a full-day mediation with Mark Rudy. (Id. ¶ 24). After a full-day mediation, the parties were unable to reach an agreement on a class-wide settlement, but the mediator made a written "mediator's proposal" to resolve the case and gave each side one week to accept or reject its basic terms. (Id.). Subsequently, the parties each accepted the mediator's proposal. (Id.).

Plaintiff prepared and filed a motion for preliminary approval of the Settlement, which was heard on January 3, 2018. On January 3, 2018, the Court entered an Order preliminarily approving the Settlement (Dkt No. 39, the "PA Order"), including the attorneys' fees allocation of up to $87,500.00 to Class Counsel, representing 25% of the Settlement amount and costs not to exceed $20,000. (PA Order ¶ 2). On March 19, 2018, Plaintiff filed his motion for attorneys' fees and costs (Dkt. No. 41), which will be heard simultaneously with this Motion for final approval of the Settlement. Plaintiff's motion for attorneys' fees and costs was filed before the expiration of the Class Notice objection period in accordance with Federal Rule 23(h) and the Ninth Circuit's holding in the case of *In re Mercury International Corp. Securities Litigation*, 618 F. 3d 918, 933 (9th Cir.

2010) (motions for attorneys' fees should be filed before class response expiration period).

## B. <u>Summary of Settlement and Results of Class Notice Administration</u>

In accordance with the Settlement and PA Order, the Notices of Proposed Class Action Settlement and Share Forms (collectively, the "Notice Packets") were mailed to the Class Members on February 2, 2018, and the deadline to opt out of or object to the Settlement (or Plaintiff's fee motion) expired on April 3, 2018. (Larion Fee Decl., ¶ 8). The response of the Class members to the Class Notice has been exceptionally positive:

➢ After conducting thorough skip traces on all Notice Packets that were returned and remailing, not a single Notice Packet out of the 111 remained undeliverable. (Larion Decl., ¶ 4).

➢ ***Not a single Class Member opted out of the Settlement***. (Id., ¶ 6).

➢ ***Not a single Class Member objected to the Settlement***. (Id., ¶ 6).[2]

➢ All 111 Class Members will therefore participate in the Settlement, yielding a 100% participation rate. (Ackermann FAM Decl., ¶ 4).

➢ If the court grants final approval to the class settlement, 100% of the Net Settlement Amount of $222,500 will be distributed to the 111 Class Members on a pro-rata basis. (Id.).

➢ The average Settlement share is $2,004.50 per Class Member, and the maximum share is $4,967.69 for those Class Members who worked for Defendant throughout the Class Period.. (Larion Decl., ¶ 8).

Plaintiff, through the Settlement Administrator, has provided notice of the Settlement to the Class in full compliance with the Court's Preliminary Approval Order. (Larion Fee Decl., ¶¶ 4-10). The response of the Class to the Class Notice not only supports the Court's decision to grant preliminary approval of the Settlement, but also amply supports the Court proceeding to grant final approval of the Settlement. Given the 100% Settlement participation rate among the Class Members and their 100% endorsement of the Settlement, due to there being no opt-outs or objections, there are truly are no reasons for

---

[2] This also means that no objection to Plaintiff's motion for fees and costs were submitted by any Class Member. (Id.).

this Court to deny final approval of the Settlement, which it has already approved on a preliminary basis. For the reasons set forth herein and in Plaintiff's Motion for Attorneys' Fees and Costs [Dkt. No. 41], the Court should enter an order finally approving the Settlement, including attorneys' fees and costs, settlement administration expenses, the proposed service award to the Class Representative, and the PAGA allocation to the LWDA.

## II.    CLASS MEMBERS WERE GIVEN THE BEST PRACTICAL NOTICE OF THE SETTLEMENT

In approving a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. Rule Civ. Proc. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The notice is sufficient for purposes of due process if it contains a description of the litigation, the terms of the Settlement, and explanation of the right to opt-out of or object to the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The notice procedure approved by the Court was and is the best notice practicable. As discussed above, the settlement administrator duly mailed the Notice Packet to all 111 Class Members. (Larion Fee Decl., ¶ 7). When a Notice Packet was returned as undeliverable, the settlement administrator made reasonable efforts to obtain a valid mailing address by first processing and updating the address through the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service, and then performing advanced skip traces to locate new addresses for mail that was returned. (Id., ¶¶ 6-10). This resulted in the successful delivery of all 111 Notice Packets. (Larion Decl., ¶ 4).

The Notice Packet provided Class Members with all relevant information needed to make an informed decision. (See Larion Fee Decl., **Exhibit A**). It provided an explanation of the litigation and proposed settlement, and procedures on how to opt out or object and appear at the final fairness hearing. (Id.). The documentation provided a brief explanation of the case, the exclusion date and procedure for exclusion, the proposed attorneys' fees, litigation costs, administrator costs, service award, and LWDA payment to be requested and the individual members' estimated recovery, which were all included in the notice papers. It also stated that those who do not opt out will be bound by the Settlement and Class release. (Id., ¶ 4). Moreover, the Court approved the Notice Packet as to form and content in its PA Order. (PA Order, ¶ 5). Therefore, the Court may proceed to determine the fairness and adequacy of the settlement and order its approval, secure in the knowledge that all Class Members have been given the opportunity to participate fully in the notice process and have been fully apprised of their rights and options.[3]

## III.  THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims . . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e)(1). The court must engage in a two-step process to approve a proposed class action settlement. First, the court must decide whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. *Id*. A court should approve a class settlement under Rule 23(e) if it "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

---

[3] All the notice requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715 had also been timely satisfied (Ackermann Decl., ¶ 16).

Courts in the Ninth Circuit look to the following eight factors to assess whether final approval of a settlement is warranted: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount [that is] offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026. (9th Cir. 1998). "Not all of these factors will apply to every class action settlement" and "[u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telcomms.*, 221 F.R.D. at 525-26. In addition, courts consider the manner by which the settlement was reached to ensure that it is not a product of fraud or collusion. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In considering these factors, courts recognize the strong judicial policy favoring settlements, particularly in the context of complex class litigation. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). There is no requirement to assess whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 2013) (quoting *Hanlon*, 150 F.3d at 1027).

## B.    Strengths of the Case and Risks of Litigation

Plaintiff briefly addresses the strength of the case and risks of continued litigation to avoid belaboring the points made in Plaintiff's Motion for Preliminary Approval of Class Action Settlement [Dkt No. 29] and Motion for Attorneys' Fees and Costs [Dkt No. 41]. The Settlement is an excellent result for the Class in view of the strength of and possible range of recoveries for the Class' claims and the great risks posed in continuing with litigation. Although Plaintiff believed that there was a strong possibility of certifying the

claims and prevailing on the merits, they also recognized the potential risk, expense, and complexity posed by litigation, such as class certification, summary judgment, trial and/or on the damages awarded, and an appeal that could take several more years to litigate. (Ackermann PAM Decl. ¶ 30). Defendant presented several compelling defenses and denied and continues to deny generally the claims and contentions alleged in the FAC. (Ackermann PAM Decl. ¶ 31).

As explained in detail in Plaintiff's Motion for Preliminary Approval of the Settlement [Dkt No. 29], Defendant showed that courts are split on whether Plaintiff's claims for unreimbursed business-related expenses under Cal. Labor Code § 2802 are appropriate for class certification. (Ackermann PAM Decl., ¶ 32). Defendant further contended that even if Plaintiff won class certification, the Class could lose on the merits for several reasons, including the fact that there was seasonality and thus damages estimates could not be reliably extrapolated; that oil change odometer reports for Plaintiff indicated significantly lower miles driven than those that he reported during Defendant's mileage audit; and the fact that only 5 of the 8 Class Members in the mileage audit were potentially under-reimbursed, while the 3 others received a higher reimbursement amount than their miles driven multiplied by the IRS mileage rate, suggesting that there might be manageability issues on ascertaining who was under-reimbursed at trial. (Id.). Lastly, Defendant argued that Plaintiff's claims for PAGA penalties are derivative of the other claims and suffer from the same shortcomings and that courts have discretion to award lesser PAGA penalties pursuant to Labor Code § 2699(e)(2). (Ackermann PAM Decl., ¶ 33). Defendant could also have defended itself by asserting that it was not obligated to reimburse at the IRS mileage rate. *See, e.g., Ortiz v. CVS Caremark Corp.*, 2013 U.S. Dist. LEXIS 169854, *39 (N.D. Cal. 2013) (nothing that a sub-IRS mileage rate may nevertheless satisfy Labor Code § 2802 if actual expenses are reimbursed to employees).

Despite the foregoing risks, Plaintiff and Class Counsel recovered $350,000.00 dollars on behalf of the Class, an amount that the Class members would likely not have

recovered independent of this action. Given the uncertainty associated with the merits and the risk of non-certification, Plaintiff obtained an outstanding settlement for the Class.

### C.   Amount Offered in Settlement

As discussed at length in Plaintiff's Motion for Preliminary Approval, Plaintiff calculated the Class' maximum potential gross recovery on each of their claims (i.e., the highest possible recovery if Plaintiff certified the Class, prevailed on each of his causes of action, and obtained an award for maximum damages available on each cause of action as follows:[4]

| | | |
|---|---|---|
| Labor Code § 2802 Claims: | $ | 471,319.68 |
| PAGA Penalties: | $ | 84,535.00 |
| **TOTAL** | **$** | **555,844.68** |

Thus, the Settlement represents approximately 62.9% of the maximum damages and penalties that Plaintiff contends are owed to the Class, and is a fair compromise given the risks and uncertainties presented by continued litigation. (Id., ¶ 35).

Defendant asserted and would have continued to assert legal and factual grounds to defend against this action, including the possibility of non-certification of Plaintiff's claims, and factual and legal defenses on the merits. (Id., ¶¶ 32-33). While Plaintiff remains confident in his position that Defendant violated California law, Defendant maintained that many sales representatives may have been over-reimbursed if the case proceeded to certification and trial, raising manageability issues on ascertaining who was actually under-reimbursed. Moreover, continued litigation would be costly, time consuming, and uncertain in outcome. By contrast, this Settlement ensures timely relief and substantial recovery of a significant portion of the unreimbursed business-related expenses Plaintiff contends are owed to the Class. (Ackermann PAM Decl., ¶ 38).

### D.   The Extent of Discovery Completed and the Stage of Proceedings

The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an "adequate opportunity to assess the

---

[4] *See* Ackermann PAM Decl., ¶ 27

pros and cons of settlement and further litigation." *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003). As detailed in Plaintiff's Motion for Preliminary Approval, extensive discovery and investigation was conducted by both sides.

Prior to negotiating the Settlement, the Parties conducted formal discovery, including Interrogatories, Requests for Production, and depositions. Plaintiff's counsel reviewed a body of highly relevant information including a spreadsheet identifying the Class Members, their dates of employment as Account Executives, their monthly mileage allowances, and dates, if at all, their allowances changed; Defendant's "Account Executive" job description sheet; an affidavit signed by Plaintiff and other class members attesting to, *inter alia*, his and their license and insurance status and use of personal vehicles for work; Defendant's Street Sales Reimbursement Policy; Plaintiff's employment offer; and a sample Class Member mileage logs from an "audit" conducted by Defendant of certain Class Members; Plaintiff's earning statements; Plaintiff's employment application; and Plaintiff's personnel file. (Ackermann PAM Decl. ¶¶ 19, 23). The parties also drafted and exchanged detailed mediation briefs setting forth the strengths and weaknesses of their claims and defenses. (Id., ¶ 24), including detailed damages analyses. (Id.).

Based upon the record that was developed through this investigation and formal and informal discovery processes, Plaintiff's Counsel were able to realistically estimate class damages and assess the risks of further litigation. (Id., ¶¶ 19-21, 23). It was only after the parties investigated and evaluated the strengths and weaknesses of the case, attended a full-day mediation, and engaged in hard-fought negotiations following depositions, that the settlement was completed. (Id., ¶ 24; Ackermann FAM Decl., ¶ 10). This Settlement, therefore, was reached only after the parties had a clear view of the strengths and weaknesses of their cases sufficient to support the Settlement. See *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases"). With this information, Plaintiff and his counsel were able to formulate detailed damage models, engage in

informed negotiations, and reach a sensible and fair settlement, that was based on a "mediator proposal" sent to the parties for consideration after they reached impasse in their negotiations.

### E.    Counsel Believes the Settlement is in the Best Interest of the Class

The experience and views of counsel also weighs in favor of approving the Settlement. Counsel for both parties have substantial experience in prosecuting, defending, and/or negotiating the settlement of employment wage-and-hour class action matters, including a number of other § 2802 mileage reimbursement class actions, and concur that the settlement is fair, and Class Counsel have recommended approval of the proposed settlement as in the best interests of the Settlement Class. (Ackermann FAM Decl., ¶ 11). *See Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the  settlement after hard-fought negotiations is entitled to considerable weight.") *aff'd,* 661 F.2d 939 (9th Cir. 1981). Class Counsel together with the named Plaintiff strongly believe that the proposed settlement is a fair, adequate, and reasonable resolution of the Class' dispute with Defendant and is preferable to continued litigation. (Ackermann PAM Decl., ¶ 29; Ackermann FAM Decl., ¶¶ 11).

### F.    Class Members Unanimously Endorsed the Settlement

The Court may appropriately infer that a class action settlement is fair, adequate and reasonable when, among other reasons, few class members object to it. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Here, the reaction of the Settlement Class Members has been one of overwhelming approval – not a single Class Member requested to be excluded from the Settlement, nor were there any objections thereto. (Larion Decl., ¶ 6). These results demonstrate that the Class Members unanimously approve of the Settlement, which weighs heavily in favor of granting of final approval. *See Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *2, *4

1  (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections filed and one of 2,765

2  class members requested exclusion from settlement). These stellar results of the Class

3  notice process alone provide a compelling basis for the Court to grant final approval of the

4  Settlement.

5  **IV.    THE PROPOSED PAGA ALLOCATION SHOULD BE APPROVED**

6       When PAGA claims are settled, the trial court must "review and approve" the

7  settlement. Id. § 2699(l). In so doing, the court must consider whether the proposed "PAGA

8  settlement is fair and adequate in view of the purposes and policies of the statute."

9  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016). The parties

10  have agreed to allocate $5,000 of the Gross Settlement Amount as PAGA penalties, and

11  the Court has granted preliminary approval of this allocation. Of this amount, 75% (i.e.,

12  $3,750) shall be sent to the Labor and Workforce Development Agency (LWDA), and the

13  remaining 25% shall be distributed to the Class.

14       This allocation is fair and reasonable given the limited nature of those claims, which

15  would only apply to a minority of the Class members who worked for Defendant within a

16  year of the PAGA notice having been mailed. Courts "repeatedly approve[] PAGA

17  allocations of both smaller amounts and that comprised a smaller portion of the total

18  settlement consideration in the agreements at issue." (See *Davis v. Cox Commc'ns*

19  *California, LLC*, No. 16cv989 BAS (BLM), 2017 WL 1496407, at *1 (S.D. Cal. Apr. 26,

20  2017) (preliminarily approving $4,000 PAGA allocation in $275,000 settlement); *Moore*

21  *v. Fitness Int'l, LLC*, No. 12cv1551 LAB (NLS), 2014 WL 12571448, at *5 (S.D. Cal. Jan.

22  22, 2014) (approving $2,500 PAGA allocation when attorneys' fees award alone amounted

23  to $200,000); *Jack v. Hartford Fire Ins. Co.*, No. 09cv1683 MMA (JMA), 2011 WL

24  4899942, at *6 (S.D. Cal. Oct. 13, 2011) (approving $3,000 PAGA allocation in

25  $1,200,000 settlement); *Singer v. Becton Dickinson & Co.*, No. 08cv821 IEG (BLM), 2010

26  WL 2196104, at *2 (S.D. Cal. June 1, 2010) (approving $3,000 PAGA allocation in

27  $1,000,000 settlement); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL

28  928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving $1,500 PAGA allocation in $1,026,000

settlement); *In re Nordstrom Commission Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]he trial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").) Thus, the $5,000 allocation out of the $350,000 Settlement amount, which the Court has preliminarily approved, is well within a fair and reasonable range for the PAGA penalties and should now be finally approved.

## V.    THE REQUESTED SERVICE AWARD IS REASONABLE

The Settlement contemplates a service award to the named Plaintiff in an amount of $7,500, to recognize his time and efforts on behalf of the Class, including time spent in meetings with Class Counsel, his efforts in gathering and providing documents, traveling to and attending mediation, traveling to and sitting for his deposition, reviewing pleadings and the settlement, and his acceptance of the financial risk in pursuing this litigation. (Ackermann Decl. ¶ 15).

Plaintiff was instrumental in prosecuting this lawsuit and was an important source of information during the course of litigation this. (Id.) Plaintiff provided invaluable assistance to Class Counsel and the Class in this case, including providing factual background for the Class Complaint and mediation; participating in phone calls to discuss litigation and settlement strategy; reviewing the settlement documents; responding to discovery; sitting for his deposition; and attending the all-day mediation in San Francisco, California. (Id.) Plaintiff agreed to participate in this case with no guarantee of personal benefit. (Id.) Further, Plaintiff agreed to undertake the financial risk of serving as Class Representative and exposed himself to the risk of negative publicity by anyone who opposed this case. (Id.) The Class would have received no benefit had it not been for the contributions of Plaintiff. Moreover, Plaintiff faced and accepted the significant risk in bringing this litigation—namely, that had he lost, Plaintiff could have been ordered to pay Defendant's costs. In contrast to the more limited class release, Plaintiff also agreed to a more robust general release of all his individual claims. (Id.)

Moreover, the requested service award falls well within the range of incentive payments typically awarded to Class Representatives in similar class actions. *See e.g. Bond*

*v. Ferguson Enterprises, Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) (approving $11,250 service award to each of the two class representatives in a trucker meal break class action); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 493 (E.D. Cal. 2010) (approving service awards in the amount of $10,000 each from a $300,000 settlement fund in a wage/hour class action); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, at *28 (E.D. Cal. Oct. 19, 2006) ("the court finds plaintiffs' enhancement payments of $15,000 each to be reasonable."); *Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008) (approving "$25,000 incentive award for each Class Representative" in wage an hour settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class"). Therefore, the service award contemplated by the Settlement, which no Class Member has objected, should be approved.

## VI.   THE REQUESTED ATTORNEYS FEES AND COSTS ARE REASONABLE

Plaintiff has filed a separate Motion for Attorneys' Fees and Costs [Dkt No. 41] setting forth in detail the reasons for which the award for fees and costs contemplated by the Settlement are fair and reasonable, and should be approved. In summary, the attorneys' fees should be granted because Class Counsel showed great skill, thoroughness, and conscientiousness in investigating and developing the claims, liability theories, and estimated possible recoveries in the litigation, and otherwise expended great effort on behalf of the Class; Class Counsel has ample experience in and has successfully litigated similar wage and hour class actions on behalf of sales representatives challenging deficient reimbursement systems, and vigorously pursued those matters and this case (Ackermann PAM Decl. ¶¶ 4-14, 39-42; Melmed PAM Decl. ¶¶ 8-14); the requested fees are allowed by statute, and reasonable in light of the Ninth Circuit's benchmark of 25% of the common fund in awarding fees in class actions, the time Class counsel expended litigating this

matter, and in the context of a lodestar crosscheck; and the requested fees are also in line with awards in similar cases. *See e.g. Fernandez v. Victoria Secret Stores,* 2008 U.S. Dist. LEXIS 118631, *1 (C.D. Cal. 2008) (34% award); *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV111802 PSGPLAX, 2015 WL 9664959, at *11 (C.D. Cal. 2015) (30% award); *Ingalls v. Hallmark Mktg. Corp.,* 2009 U.S. Dist. LEXIS 131078, *6 (C.D. Cal. 2009) 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6 (33.33% award); *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 U.S. Dist. LEXIS 83796, *29 (C.D. Cal. 2014) No. SACV 11-01730 DOC (30% award); *Rippee v. Boston Mkt. Corp.,* 20106 U.S. Dist. LEXIS 101136, *13 (C.D. Cal. 2006) Case No. 05cv1359 BTM (JMA), Doc. No. 70, at 7–8 (awarding 40% of common fund as attorneys' fees in a wage and hour class action); *Birch v. Office Depot, Inc.*, 2008 U.S. Dist. LEXIS 102747, *7 Case No. 06cv1690 DMS (WMC), Doc. No. 48, ¶ 13 (awarding 40% of common fund as attorneys' fees in a wage and hour class action).[5] Moreover, the requested cost award was already preliminary approved by the Court.[6] Finally, there are no objections to the requests for fees and costs from within or outside the Class.

Accordingly, all of the factors used in determining the appropriateness of a fee and cost request support the conclusion that the amount of fees and costs requested by Class Counsel for their efforts on behalf of the Class are reasonable.

## VII. **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court enter the proposed order submitted herewith finally approving the Settlement, including the

---

[5] *See also Benitez v. Wilbur*, E.D. Cal. Case No. 08-1122 LJO GSA (33.33% award). *Alvarado, et. al. v. Nederend*, 2001 U.S. Dist. LEXIS 52793, *31 (E.D. Cal. 2011), E.D. Cal. Case No. 1:08-cv-01099 OWW DLB (33.33% award); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 492 (E.D. Cal. 2010), Case No. 1:07-cv-00227 (33.33% award); *Chavez, et al. v. Petrissans*, 2008 U.S. Dist. LEXIS 111596, E.D. Cal., 1:08-cv-00122 (33.3% award).

[6] As noted, Class Counsel actually incurred litigation costs in the amount of $20,745.03, however, Class Counsel only seeks reimbursement of litigation costs as preliminarily approved by the Court in the amount of $20,000.

allocations for attorneys' fees, costs, settlement administrative expenses, the requested service award to Plaintiff, and the PAGA allocation, as set forth in the Settlement Agreement and the Court's Preliminary Approval Order.

Respectfully submitted,

ACKERMANN & TILAJEF, P.C.
MELMED LAW GROUP P.C.

Dated: April 2, 2018            By:    /s/Craig J. Ackermann
                                       Craig J. Ackermann, Esq.
                                       Attorneys for Plaintiff and the Class